GEORGE F. ASHMAN v. THE FLINT & PERE MARQUETTE
RAILROAD COMPANY.

*Negligence—Question of fact—Railroad companies—Unblocked frog
—Assignments of error—Waiver—Pleading—Variance.*

1. Plaintiff was employed as a switchman in defendant's yard, and
was injured by reason of catching his foot in an unblocked
frog while attempting to uncouple cars in a moving train;
and, in affirming a judgment for $6,000 rendered in his favor
for the damages arising from such injury, it is *held* that—

 *a*—Section 22 of Act No. 174, Laws of 1883 (3 How. Stat. §
3397*a*), which requires railroad companies so to adjust, fill, or
block the frogs, switches, and guard-rails on their roads, in all
yards, divisional and terminal stations, and where trains are
made up, as to prevent the feet of employés or other persons
from being caught therein, was passed upon the urgent demand
of the people that such measures be taken to save the con-
stantly recurring danger to life and limb from open frogs.[1]

 *b*—A railroad company is guilty of actionable negligence in
*knowingly* permitting a frog, required by the statute to be
filled or blocked, to remain unblocked or unfilled, or in per-
mitting it so *to remain* for such a length of time as to raise
a legal presumption of knowledge or neglect of duty on its
part, and in either case the company is liable to an employé
who, without fault on his part, catches his foot in an open
frog, and is thereby injured.

 *c*—The duty of keeping the frogs in its yards filled or blocked
is one that a railroad company cannot delegate to any of its
employés, so as to relieve itself from the obligation imposed by
the statute, under which it is required to keep its yards reason-
ably safe in this respect, which duty is of such a character
that the person or persons to whom it is intrusted stand in the
place of the railroad company, and their neglect is its neglect;
citing *Johnson v. Spear,* 76 Mich. 139; *Van Dusen v. Letellier,*
78 Id. 492; *Harrison v. Railroad Co.,* 79 Id. 409; *Brown v.
Gilchrist,* 80 Id. 56; *Morton v. Railroad Co.,* 81 Id. 423;
*Sadowski v. Car Co.,* 84 Id. 100; *Roux v. Lumber Co.,* 85 Id.
519; *Tangney v. J. B. Wilson & Co.,* 87 Id. 453.

 *d*—Notice to the yard-master of a railroad company that

---

[1] See *Grand v. Railroad Co.,* 83 Mich. 564, for a partial con-
struction of this statute.

certain frogs are unblocked, one of which is pointed out to him, is notice to the company; citing *Lyttle v. Railway Co.*, 84 Mich. 289.

e—It is the duty of a railroad company not only to employ men to perform the work of blocking its frogs, and furnish the necessary material for that purpose, but it must also see that the men so employed are not negligent in performing the work.

2. Where, in a negligence case, the facts are not in dispute, but are such that different minds may honestly draw different conclusions from them, the question of negligence is for the jury; citing *Railroad Co. v. Van Steinburg*, 17 Mich. 99; *Teipel v. Hilsendegen*, 44 Id. 461; *Crosby v. Railway Co.*, 58 Id. 458; *Lowell v. Watertown*, Id. 568; *Carver v. Plank Road Co.*, 61 Id. 584; *Harris v. Township of Clinton*, 64 Id. 447; *Alexander v. Big Rapids*, 70 Id. 226; *Luke v. Mining Co.*, 71 Id. 364; *Little v. Railway Co.*, 78 Id. 205; *Adams v. Iron Cliffs Co.*, Id. 271; *Brezee v. Powers*, 80 Id. 172; *Engel v. Smith*, 82 Id. 1; *Sadowski v. Car Co.*, 84 Id. 100; *Roux v. Lumber Co.*, 85 Id. 519; *Archer v. Railway Co.*, 87 Id. 101; *Sweet v. Railroad Co.*, Id. 559.

3. It has never been held in Michigan that stepping between moving cars to uncouple them was, as a matter of law, negligence; citing *Gardner v. Railroad Co.*, 58 Mich. 592; but it has generally been held to be a question for the jury.

4. The variance between an allegation in a declaration in a negligence case that the plaintiff was employed as a switchman, and was discharging his duties as such, when injured, and proof that he was the conductor of a switch engine, or foreman of a switching crew, is immaterial.

5. Where the brief of counsel for the appellant contains no argument in favor of certain assignments of error, counsel for the appellee are not called upon to argue such assignments in their brief; and, although appellant's counsel may state in their brief that such assignments are not waived, if they are not referred to upon the oral argument, where the counsel for the appellee may have an opportunity to meet such argument as might be made in their favor, the Court will treat such assignments as waived.

Error to Bay. (Cobb, J.) Argued February 17, 1892. Decided March 11, 1892.

Negligence case. Defendant brings error. Affirmed. The facts are stated in the opinion.

*William L. Webber,* for appellant.

*Shepard & Lyon,* for plaintiff.

MORSE, C. J. Plaintiff was switching in the yard of defendant at East Saginaw, Mich., June 5, 1890, and received injuries while attempting to uncouple cars. He brings this action for damages, alleging as negligence in the defendant the leaving of a frog unblocked, in which he caught his foot, thereby causing his injury. The defendant introduced no testimony, and plaintiff had verdict and judgment in the circuit court for Bay county.

The plaintiff, according to his own testimony, was in charge of a pony engine, doing switching in the yard of the defendant, and had some men with him, assisting, who were under his control and orders, as was also the engineer. His business was making up and taking to pieces trains as they came in on the several divisions. On the evening of the injury he was taking to pieces two trains, " to get the warehouse cars, to take them down so that they could unload them, and load the freight into other cars, to send out to their destination, whichever way they would run." He was hurt in the following manner:

"I went in to pull a pin. After the train stopped, the slack had run back, as there was a little down grade towards the river, and the slack was taken up, so that I could not pull the pin. I stepped out and swung the engineer back,—to back up,—and as the slack came back I stepped in to pull the pin, having hold of the hand-ladder; and I only took a couple of steps in trying to get the pin, as it was fast, as I was caught in a frog, and, having hold of the hand-ladder, it pulled my shoe off, and the jerk released my shoe, released my hold on the ladder on the car, and I fell in some way upon the rail, so that it took my clothes off of me and injured my leg and hip."

His left foot was the one caught, and his right side fell nearest to the track.

There are many assignments of error not argued in the brief of defendant's counsel, with the statement in such brief, however, that they are not waived because not so argued. The counsel for plaintiff, in their brief, pass such assignments with the remark that they treat them as waived, as they consider that they are entitled, under the rules, to know by appellant's original brief what the position of such appellant is on each assignment upon which it relies for a reversal of the cause. None of these assignments were referred to upon the oral argument. We shall not, therefore, consider them. We are not disposed to go over some 35 assignments to ascertain whether the error alleged in each is well assigned or not, when the counsel for the appellant does not consider them of sufficient importance to point out to us their merit, if they have any. And under the rules we think the position of the appellee's counsel is correct, that, if there is no argument in the appellant's brief in favor of the correctness of an assignment, counsel for appellee are not called upon to argue such assignment in their brief; and, although it may be stated that such assignment is not waived, if the same is not referred to upon the oral argument, where the counsel for appellee may have opportunity to meet such argument as might be made in its favor, this Court will treat it as waived.

The first objection to the judgment is that the court below should have instructed the jury to bring in a verdict for defendant. This involves the question of the negligence of the defendant, as well as the contributory negligence of the plaintiff.

*First.* As to the negligence of the defendant. This was properly submitted to the jury. The statute (Act No. 174, Laws of 1883), expressly provides, under

pecuniary penalty, that frogs like the one which caused the injury to plaintiff shall be adjusted, filled, or blocked, so as to prevent the feet of employés or other persons from being caught therein. This law was passed upon the urgent demand of the people that such measures be taken to save the constantly recurring danger to life and limb from open frogs. By this legislation, an open frog in a railroad yard was recognized as a constant source of danger and of menace to human life; and to keep such frogs unfilled or unblocked was considered by this statute criminal negligence, to be punished by a penalty. To permit this frog by which plaintiff was injured to remain unfilled or unblocked, with the knowledge of the defendant, or for such a length of time that knowledge or neglect of duty would be presumed under the law, would certainly be actionable negligence, and render the defendant liable to one who, without fault on his part, was injured thereby. And the duty of keeping these frogs filled or blocked in the yard of the defendant was one that it could not delegate to any of its employés, so as to relieve itself from the obligation that the law imposed upon it in this respect. With this statute in force, it was the duty of the defendant to keep its yard reasonably safe in this respect; and it is such a duty that the person or persons to whom it is intrusted will stand in the place of the master, and their neglect will be its neglect. *Johnson v. Spear,* 76 Mich. 139; *Van Dusen v. Letellier,* 78 Id. 492; *Harrison v. Railroad Co.,* 79 Id. 409; *Brown v. Gilchrist,* 80 Id. 56; *Morton v. Railroad Co.,* 81 Id. 423; *Sadowski v. Car Co.,* 84 Id. 100; *Roux v. Lumber Co.,* 85 Id. 519; *Tangney v. J. B. Wilson & Co.,* 87 Id. 453.

It is undisputed that this frog was open when the plaintiff was hurt; and it is also quite apparent that, if it had been filled or blocked, he would not have been

injured.    There was also evidence tending to show
that other frogs in this same yard were unblocked, and
that the yard-master was notified of their condition some
time before this accident, and one open frog pointed
out to him.    Notice to him was notice to the defendant.
*Lyttle v. Railway Co.*, 84 Mich. 289.    There was no show-
ing that this particular frog had ever been blocked, and
there was testimony tending to show that it had been
open at least since the month of March before the acci-
dent.    It is true that there was evidence from one witness
tending to show that the defendant had men in its
employ whose duty it was to see that all the frogs were
kept blocked or filled, and that plenty of proper material
was furnished with which to do the work; but there
was also from the same witness the statement that,
although these men were employed to do it, they had
not performed their duty.    The duty of defendant did
not end with the employment of these men to perform
this work, and the furnishing of material to do it
with.    The duty devolved upon it also to see that they
were not negligent in such work, since their negligence
was its negligence.    The question of defendant's negli-
gence was clearly and fairly presented to the jury by the
charge of the court.

*Second.* It is insisted that, as the plaintiff himself knew
that there were unblocked frogs in the yard, although he
did not know of this particular one where he was hurt,
he was negligent, as a matter of law, in going between
the cars while they were in motion to pull this pin.    It
is argued very strenuously and quite ingeniously that the
courts are wrong in ever submitting to a jury the ques-
tion of negligence; that the best definition of negligence
ever given was that of the late Mr. Justice CAMPBELL, in
*Mich. Cent. R. R. Co. v. Coleman,* 28 Mich. 449, to wit:
"Negligence is neither more nor less than a failure of

duty;" and it is reasoned that this failure of duty is always a matter to be determined by the court, and the province of the jury is only to say what is the fact in a given case, and for the court to say what is the law. For instance, in the case before us it is claimed that it was a question for the jury to find whether the plaintiff entered between the cars to uncouple them while they were in motion, and for the court to say whether such act was negligent; that, the fact being undisputed that he did so go between the moving cars, the circuit judge should have taken the question of the plaintiff's contributory negligence from the jury, and decided that matter himself. But Mr. Justice CAMPBELL, in his opinions, as well as all other jurists and text-writers, recognizes the fact that in law no man can be guilty of negligence who uses in his acts, or in his omissions to act, the care and prudence that would have been exercised under like circumstances by an ordinarily careful and prudent man. The negligence of the plaintiff in this case, if any, was the failure to use such care and caution, which would be "the failure of duty" in this particular case. It is well settled, it seems to us, in the law of negligence everywhere, that even when the facts are not in dispute, but are such that different minds might honestly draw different conclusions from them, the question of negligence belongs to the jury, and not to the court. It is certainly the law in this State. *Detroit & M. R. R. Co. v. Van Steinburg*, 17 Mich. 99; *Teipel v. Hilsendegen*, 44 Id. 461; *Crosby v. Railway Co.*, 58 Id. 458; *Lowell v. Watertown*, Id. 568; *Carver v. Plank Road Co.*, 61 Id. 584; *Harris v. Township of Clinton*, 64 Id. 447; *Alexander v. Big Rapids*, 70 Id. 226; *Luke v. Mining Co.*, 71 Id. 364; *Little v. Railway Co.*, 78 Id. 205 (opinion by Mr. Justice CAMPBELL); *Adams v. Iron Cliffs Co.*, Id. 271; *Brezee v. Powers*, 80 Id. 172; *Engel v. Smith*, 82 Id.

1; *Sadowski v. Car Co.*, 84 Id. 100; *Roux v. Lumber Co.*, 85 Id. 519; *Archer v. Railway Co.*, 87 Id. 101; *Sweet v. Railroad Co.*, Id. 559.

COOLEY, C. J., said in *Detroit & M. R. R. Co. v. Van Steinburg*, 17 Mich. at page 118, that—

"As a general rule, it cannot be doubted that the question of negligence is a question of fact, and not of law."

See, also, cases there cited. It has also been said in several of the cases above cited that, if the trial judge has any doubt as to this matter of negligence, it is his duty to submit the question to the jury. And if the failure to use the care and caution which would have been exercised by an ordinarily careful and prudent man under the same circumstances enters into the question of negligence, then I am satisfied that whether or not there has been such a failure can best be determined by a jury.

The argument of defendant's counsel that the jury were not competent, because unskilled, to determine whether plaintiff's act was negligent, applies to courts as well as to juries. The counsel argues that the uncoupling of cars and switching them is a technical employment, requiring the skill and experience of practice, and that—

"A brakeman or switchman of experience would justly smile at suggestions from the average juryman as to how he should perform his duties."

Are judges supposed to know anything more about the proper manner of performing a switchman's or brakeman's duties than jurors? The answer is obvious. A jury of 12 men, drawn from the body of the people, and from all the avocations of life, would be more likely to have among its members men familiar with switching or braking upon railroads than would the bench, composed of men whose whole lives have generally been devoted to

one subject,—the study and practice of law; and among these 12 men might quite frequently be found men who had been switchmen or brakemen. When the inquiry arises in any case what an ordinarily prudent man would have done under given circumstances, the judgment of twelve men is obviously better than the judgment of one, as the experience in life of twelve men must have been, collectively, more varied and extensive than that of any one man, however learned in the law he may be; and how men ordinarily act in the presence of danger, or to avoid it, can be better settled by twelve men than one man, because their united experiences are brought to bear upon the question, and each has the benefit of the experience of all of them in arriving at a fair, true, and just conclusion. In the present case the circuit judge told the jury that he did not know whether it was negligence or not in the plaintiff to attempt the uncoupling of these cars in the way he did, but that it was for them to determine from all the circumstances in the case. Yet it is contended that, without this knowledge, it was for him to declare as a matter of law that the plaintiff was negligent. Under all the evidence the case was rightly submitted to the tribunal which the law has authorized to settle the question of negligence when to the court it seems to be in doubt.

It is contended that, under the rules of the defendant, the plaintiff was not authorized to enter between the moving cars to pull this pin; that he could just as well have done it with the cars standing still; and, as he had control of the engine,—the engineer being under his orders,—he was plainly negligent in not doing so. But the testimony shows that there was no rule of the defendant forbidding the uncoupling of cars while in motion, or even advising it not to be done. On the contrary, the evidence showed that it was the common custom to

uncouple cars while in motion in this yard, and that it. was not only done in the presence of the yard-master, but one of them—the night yard-master—was in the habit of doing it himself. The testimony also showed that the business of the yard could not well be done without uncoupling cars in motion, and the evidence also tended to show that it could have been done with safety in the present case had it not been for this unblocked frog. We held in *Hunn v. Railroad Co.*, 78 Mich. 526, that it was competent to show what was usually and habitually done in the running of trains, because, if the company permitted a certain course of conduct, it ought not to be allowed to hold its employés to the very letter of its rules to shield itself from liability for what it had permitted. That was a stronger case than the present, because there the claim was that the train was being run in violation of the plain letter of the rules. In the present case the cars were moving slowly, and whether plaintiff was negligent was for the jury; and in this respect we think they were properly instructed. It has never been held in this State that stepping between cars to uncouple them while they were in motion was, as a. matter of law, negligence. See *Gardner v. Railroad Co.*, 58 Mich. 592. It has generally been held to be a question for the jury. *Snow v. Railroad Co.*, 8 Allen, 441; *Plank v. Railroad Co.*, 60 N. Y. 607; *Beems v. Railroad Co.*, 58 Iowa, 150 (12 N. W. Rep. 222); *Baird v. Railway Co.*, 61 Id. 359 (13 N. W. Rep. 731); *Seley v. Railway Co.* (Utah), 23 Pac. Rep. 751.

A variance is claimed between the declaration and the proofs, in that in the declaration it sets forth that the plaintiff was employed as a switchman, and was discharging his duties as such, while the proofs show that he was the conductor of a switch engine, or foreman of a switching crew. The variance is immaterial. His business was

shown to be that of a switchman; and the fact that he was in control of the engine, and had others assisting him, and under his orders, does not alter the case, as his work was switching and uncoupling cars, as a switchman in the yard.

We find no error in the charge of the court or in the proceedings upon the trial.

The judgment is affirmed, with costs.

The other Justices concurred.