Todd WOJTALEWICZ, husband and wife; and Kendra Wojtalewicz, husband and wife, Plaintiffs,

v.

PIONEER HI–BRED INTERNA-TIONAL, INC., an Iowa corporation, Defendant.

No. 8:12CV76.

United States District Court, D. Nebraska.

July 9, 2012.

David A. Domina, Jason B. Bottlinger, Domina Law Firm, Omaha, NE, for Plaintiffs.

Carolyn A. Gunkel, Jacob D. Bylund, Ross W. Johnson, Faegre, Baker Law Firm, Des Moines, IA, for Defendant.

## MEMORANDUM AND ORDER

CHERYL R. ZWART, United States Magistrate Judge.

The defendant has filed a Motion to Stay and Compel Arbitration, (filing no. 10), and a Motion to Stay Discovery and Scheduling Activities, (filing no. 12). The plaintiffs oppose both motions. The motions are fully briefed and submitted. As explained below, the defendants' motions will be granted in part as set forth in this memorandum and order.

### STATEMENT OF FACTS

Both parties have submitted evidence in support of their motions. The following evidence is uncontroverted.

Todd and Kendra Wojtalewicz, husband and wife, have filed suit on behalf of themselves and as assignees of the claims of their sons, Trey and Cole Wojtalewicz. Todd, Cole, and Trey Wojtalewicz farm in the Howard County, Nebraska area. The plaintiffs are also suing as the assignees of claims for crop-share landlords, Gerald Wojtalewicz and Quarfing Pleasant View Farm, LLC. Filing No. 1-2, at CM/ECF p.

1, ¶ 1; p. 4, ¶ 8; and pp. 7–9, footnotes 15–19; Filing No. 15–1 (Todd Wojtalewicz declaration), at CM/ECF p. 1, ¶ 2, pp. 4–5, footnotes 4–8. The plaintiffs claim that due to a defect in the seed corn purchased from Pioneer Hi–Bred International, Inc. ("Pioneer"), their 2011 corn crop, and the crop of their assignors, suffered from brittle snap which resulted in crop failure. The plaintiffs seek damages. Complaint ¶¶ 3, 23, 30, 35.

Plaintiff Todd Wojtalewicz has been a Pioneer customer for over 20 years and was a Pioneer Sales Representative from 1992 through August 31, 2011. Filing No. 10–2, Brax Affidavit, at CM/ECF pp. 2–3. In 2011, Todd Wojtalewicz sold Pioneer products to over 60 customers, including nearly 3,900 bags of Pioneer seed corn. The corn sold by Todd Wojtalewicz was delivered to him on shrink-wrapped pallets. Todd Wojtalewicz would then either deliver the seed corn to his customers, or warehouse it for them until the customer picked it up. Filing No. 10–2, Brax Affidavit, at CM/ECF p. 3, ¶¶ 12, 14; Filing No. 15–1, (Todd Wojtalewicz declaration), at CM/ECF p. 9, ¶ 24.

In addition to the corn he sold for Pioneer, for the 2011 growing season, Todd Wojtalewicz purchased for his own use, 392 bags of Pioneer seed corn and 50 units in a Pioneer PROBOX, for a total of 442 units of Pioneer seed. Filing No. 10–2, Brax Affidavit, at CM/ECF p. 3, ¶¶ 12, 14.

Prior to the planting season, Pioneer sends each of its customers a "terms and conditions sheet" which outlines the provisions applicable to the purchase of Pioneer products, including seed corn, for the upcoming growing season. Filing No. 10–2, Brax Affidavit, at CM/ECF p. 3; Filing No. 10–3. The terms and conditions sheet states that "by entering into a purchase transaction with Pioneer," the buyer "acknowledge[s] a clear understanding and agree[s]" to the purchase terms, including his or her "obligations, restrictions and rights of use as stated fully in these terms and conditions...." Filing No. 10–3, (Terms & Conditions Sheet), at CM/ECF pp. 4–5.

The terms and conditions sheet sent to Todd Wojtalewicz prior to the 2011 growing season stated:

Under the seed laws of several states ARBITRATION, CONCILIATION or MEDIATION is required as a prerequisite to maintaining a legal action based upon the failure of seed to which this notice is attached to produce as represented. The purchaser shall file a complaint (sworn for some states: signed for some states) along with the required filing fee (where applicable) with the Commissioner/Director/Secretary of Agriculture. Seed Commissioner, or Chief Agricultural Officer within such time as to permit Inspection of the crops, plants or trees by the designated agency and the seedsmen from whom the seed was purchased. A copy of the complaint shall be sent to the seller by certified or registered mail or as otherwise provided by state statute. PLEASE CONSULT PURCHASER'S STATE DEPARTMENT OF AGRICULTURE FOR SPECIFIC REQUIREMENTS BEFORE ANY LEGAL ACTION IS INITIATED. Failure to follow this procedure could limit Purchaser's legal rights, including the remedy recoverable, depending on the law of Purchaser's state.

NOTICE OF BINDING ARBITRATION: In addition to the mandatory arbitration required by several states, Purchaser and Pioneer agree that any claim or civil action of any nature arising out of or relating to the performance or quality of this product shall be submitted to binding arbitration administered by the American Arbitration Association

in accordance with its Commercial Arbitration Rules. The place of arbitration shall be Des Moines, Iowa, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Disputes concerning or related to the use restrictions and limited licenses associated with this product, or concerning or related to intellectual property rights of Pioneer in or related to this product, or claims or causes of action brought by Pioneer against the Purchaser for failure to pay for this product, are not subject to this NOTICE OF BINDING ARBITRATION.

Filing No. 10–3, (Terms & Conditions Sheet), at CM/ECF pp. 4–5.

Since 2006, the arbitration clause above was also located on the back of all Pioneer seed corn bags under a bold-print heading:

### NOTICE ARBITRATION/CONCILIATION/MEDIATION REQUIRED BY SEVERAL STATES

Filing no. 10–2, Brax Affidavit, at CM/ECF p. 4, ¶¶ 15–16; Filing No. 10–5, p. 2.

The arbitration clause recited above was present on the bags of seed corn purchased and used by Todd Wojtalewicz for the 2011 growing season. The invoice Todd, Trey, and Cole Wojtalewicz received from Pioneer for the purchase of seed corn stated:

By the purchasing of the products listed on this invoice, you hereby consent to the jurisdiction of the state or federal courts in Polk County, Iowa in the event of litigation concerning this purchase. If binding arbitration is required (see

. bag), the place of the arbitration will be Des Moines, Iowa.

Filing No. 10–2, Brax Affidavit, at CM/ECF p. 3, ¶¶ 11–13; Filing No. 10–4, at CM/ECF p. 3; Filing No. 19–1, at CM/ECF p. 2; Filing No. 19–2, at CM/ECF p. 2.

The plaintiffs do not deny receiving the Pioneer terms and conditions sheet prior to the 2011 planting season. They state, however, that they were not aware of any arbitration clause and did not agree, in writing or otherwise, to arbitrate any claims with Pioneer. Filing No. 15–1 (Todd Wojtalewicz declaration), at CM/ECF p. 9, ¶¶ 16, 19; Filing No. 15–2 (Kendra Wojtalewicz declaration); Filing No. 15–3 (Trey Wojtalewicz declaration); Filing No. 15–4 (Cole Wojtalewicz declaration). Todd Wojtalewicz states that despite his 20 years of selling seed corn for Pioneer, including the corn at issue in this case, he was never trained or told that claims against Pioneer were subject to arbitration, and he was never aware of the arbitration clause written on the seed corn bag. Filing No. 15–1 (Todd Wojtalewicz declaration), at CM/ECF p. 9, ¶ 21.

Todd Wojtalewicz ordered the 2011 seed corn by either telephone or written order form.[1] He does not recall signing any document containing an arbitration clause. Filing No. 15–1 (Todd Wojtalewicz declaration), at CM/ECF p. 10, ¶ 23. Todd Wojtalewicz claims that even had he seen the arbitration clause on the seed corn bag, by the time the corn actually arrived at his fields in 2011, it was too late to object to the clause or replace the seed because planting was in progress and time

---

1. Perhaps there is an explanation, but paragraphs 25 and 27 of Todd Wojtalewicz' declaration (filing no. 15–1, (Todd Wojtalewicz declaration), at CM/ECF p. 10, ¶¶ 25 & 27), appear to be inconsistent. But the difference is not material; Todd Wojtalewicz does not dispute receiving a Pioneer terms and conditions sheet prior to the planting season and the invoice for seed corn purchased, and he does not dispute that the arbitration clause set forth in this statement of facts was present on the seed corn bags.

was of the essence. Filing No. 15–1 (Todd Wojtalewicz declaration), at CM/ECF p. 9, ¶ 23; p. 11, ¶ 32. "It is not realistic to expect that any farmer can, nor is any farmer willing, to halt planting operations during the narrow period of time when planting can be accomplished—often a time period of only a few days—in order to negotiate with Pioneer about surprise terms and conditions it tries to impose by printing them on its bag." Filing No. 15–1 (Todd Wojtalewicz declaration), at CM/ECF p. 11, ¶ 31.

Pioneer terminated Todd Wojtalewicz as one of its sales representatives at the end of 2011 without providing an explanation. Filing No. 15–1 (Todd Wojtalewicz declaration), at CM/ECF p. 9, ¶ 20. Pioneer claims that following the termination, Todd Wojtalewicz failed to return any written documents to Pioneer as required under the Pioneer Sales Representative Agreement. Filing No. 19–3 (Letter to plaintiff's counsel), at CM/ECF p. 1.

Todd Wojtalewicz' affidavit states, "Seed planted by my landlords and sons who are the assignors of the claims [in this case] came from Pioneer, too. I ordered the seed. They did not." Filing No. 15–1 (Todd Wojtalewicz declaration), at CM/ECF p. 10, ¶ 26. There is no evidence of record indicating plaintiff Kendra Wojtalewicz, or assignors Gerald Wojtalewicz and Quarfing Pleasant View Farm, LLC purchased seed corn from the defendant. Todd, Trey, and Cole Wojtalewicz each received an invoice for seed corn purchased from Pioneer, but each invoice was sent to the same address, (Filing No. 10–4, at CM/ECF p. 2; Filing No. 19–1; Filing No. 19–2), and Trey Wojtalewicz' invoice identifies the operation name as "Wojtalewicz, Todd."

## ANALYSIS

The defendant has moved to compel arbitration under the Federal Arbitration Act, ("FAA"). See 9 U.S.C. § 2. The FAA states:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

The court must first determine if the FAA is applicable to this case. The FAA applies to arbitration provisions, thereby mandating their enforcement, provided: the arbitration agreement "must be part of a written maritime contract or a contract 'evidencing a transaction involving commerce;'" (*Southland Corp. v. Keating*, 465 U.S. 1, 11, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984)); and the agreement "may be revoked upon 'grounds as exist at law or in equity for the revocation of any contract.'" *Id.* (quoting 9 U.S.C. § 2). The plaintiffs are Nebraska citizens, the defendant is an Iowa Corporation, and the sale of seed corn involves interstate commerce. The FAA applies to this case.

The parties dispute whether the arbitration clause in the terms and conditions sheet and the back of the seed corn bags is valid and enforceable. In enacting the FAA, Congress clearly intended "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible," (*Moses H. Cone Memorial Hops. v. Mercury Const. Corp.*, 460 U.S. 1, 22, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)), and to effectuate this purpose, it specifically authorized enforcement of arbitration agreements through court or-

ders to stay litigation, (9 U.S.C. § 3), and require the parties to engage in the arbitration process, (9 U.S.C. § 4). *Id.* When an arbitration agreement exists, "the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement" applies. *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985).

> Congress provided a limited role for courts, allowing them to "consider only issues relating to the making and performance of the agreement to arbitrate." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). These issues are presumptively committed to judicial determination, because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

*Koch v. Compucredit Corp.,* 543 F.3d 460 (8th Cir.2008).

■ When a party files a motion to stay litigation and compel arbitration, the court must decide "whether a valid arbitration agreement exists between the parties and, if so, whether the subject matter of the dispute falls within the scope of the arbitration clause." *Koch,* 543 F.3d at 463. *See also U.S. for use of Lighting and Power Services, Inc. v. Interface Const. Corp.,* 553 F.3d 1150, 1154 (8th Cir.2009) ("A dispute over whether the parties agreed to arbitrate will be resolved by the district court unless the parties clearly and unmistakably provide otherwise.... Any other rule would too often force unwilling parties to arbitrate a matter they reason-

ably would have thought a judge, not an arbitrator, would decide.").

■ The arbitration clause on the Pioneer terms and conditions sheet, and on the back of every bag of seed corn sold since 2006, states that "any claim or civil action of any nature arising out of or relating to the performance or quality of this product shall be submitted to binding arbitration...." Filing No. 10–3, (Terms & Conditions Sheet), at CM/ECF pp. 4–5. The plaintiffs claim the Pioneer seed corn Todd Wojtalewicz ordered and purchased caused "brittle snap" in the 2011 corn crop, resulting in crop loss. Without question, the plaintiffs seek recovery for losses related to the "performance or quality" of the Pioneer seed corn.

The undisputed record establishes that Todd Wojtalewicz received a terms and conditions sheet for the purchase of Pioneer seed corn prior to the 2011 growing season, and that a binding arbitration clause was included within that sheet. It is undisputed that from at least 2006 through the 2011 planting season, Todd Wojtalewicz either sold or personally used thousands of bags of Pioneer seed corn, each of which had an arbitration clause posted on the back. Moreover, the invoice received by Todd Wojtalewicz for the purchase of the 2011 seed corn specifically referenced the arbitration clause on the seed corn bags. Filing no. 10–2, Brax Affidavit, at CM/ECF p. 3, ¶¶ 11–13; filing no. 10–4, at CM/ECF p. 3 ("If binding arbitration is required (see bag), the place of the arbitration will be Des Moines, Iowa.").

Todd Wojtalewicz claims he is not subject to the arbitration clause located in the terms and conditions sheet and on the back of the seed corn bag because he never signed a contract containing an arbitration clause. When deciding whether the parties agreed to arbitrate a certain

matter, courts should generally apply ordinary state-law principles that govern the formation of contracts. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (U.S. 1995); *Stark v. Sandberg, Phoenix & von Gontard, P.C.*, 381 F.3d 793, 801 (8th Cir. 2004)("[S]tate contract law governs whether an arbitration agreement is ambiguous."); *Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 946 (8th Cir. 2001)("State contract law governs whether an arbitration agreement is valid."). When applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement under the FAA, due regard must be given to the federal policy favoring arbitration. *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 475–476, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).

▪■ An agreement between a seller and a buyer for the sale and purchase of seed corn is a contract for the sale of goods governed by the Uniform Commercial Code. Iowa Code § 554.2102; Neb. Rev. St. U.C.C. § 2–102.[2] *See also Martin v. Joseph Harris Co., Inc.*, 767 F.2d 296, 303 (6th Cir.1985) ("the sale of seeds in question was clearly subject to the ... provisions of the Uniform Commercial Code").

*Except as otherwise provided in [§ 2–201] a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by that party's authorized agent or broker.*

Iowa Code § 554.2201(1); Neb. Rev. St. U.C.C. § 2–201(1) (emphasis added). The exception under § 2–201(3) provides that a written and signed agreement is not necessary "with respect to goods for which payment has been made and accepted or which have been received and accepted." Iowa Code § 554.2201(3); Neb. Rev. St. U.C.C. § 2–201(3).

■ Based on the undisputed facts, Pioneer delivered and Todd Wojtalewicz received, accepted, and paid for the seed corn. Under Iowa and Nebraska law, an enforceable contract for the sale of seed corn existed between Pioneer and Todd Wojtalewicz and the terms of that agreement are enforceable even absent a signed sales contract. *Mann v. C.I.R.*, 483 F.2d 673, 674 (8th Cir.1973) (applying Iowa law); *Cambron v. Moyer*, 519 N.W.2d 381, 384 (Iowa 1994); *Gerhold Concrete Co., Inc. v. St. Paul Fire and Marine Ins. Co.*, 269 Neb. 692, 700, 695 N.W.2d 665, 672 (2005); *Farmers Union Co-op. Elevator Federation v. Carter*, 152 Neb. 266, 40 N.W.2d 870 (1950).

The contract between Todd Wojtalewicz and Pioneer is composed of the terms and conditions sheet received by Todd Wojtalewicz before he ordered the seed corn, the oral or written order he placed to purchase the seed, the invoice he received and paid, and the terms located on the seed corn bags as specifically incorporated by reference in the invoice. The arbitration clause was included within the contract; both in the terms and conditions sheet and on the back of the bags.

The fact that Todd Wojtalewicz did not specifically "sign" the arbitration clause within the sales contract is of no import. "[I]t is well-established that a party may

2. The parties have not discussed whether Iowa or Nebraska law applies. Applying Nebraska choice of law principles, the undersigned magistrate judge believes Nebraska law applies. But I need not specifically decide that issue because, as described in this opinion, the outcome is the same under either states' law.

be bound by an agreement to arbitrate even absent a signature.... [W]hile the [FAA] requires a writing, it does not require that the writing be signed by the parties." *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 846 (2nd Cir.1987) (citing *Medical Development Corp. v. Industrial Molding Corp.*, 479 F.2d 345, 348 (10th Cir.1973); *Fisser v. International Bank*, 282 F.2d 231 (2d Cir.1960)).

■ The fact the Todd Wojtalewicz did not read the arbitration clause is of no import. An arbitration clause "need not be read to be effective; people who accept [a product] take the risk that the unread terms may in retrospect prove unwelcome." *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1148 (7th Cir.1997) (holding an arbitration clause on a terms sheet located inside the box for the delivered computer were enforceable against a buyer who accepted the computer; the buyer acknowledged seeing the statement of terms but denied reading it closely enough to discover the agreement to arbitrate).

■ Although the defendants claim the arbitration clause was not sufficiently noticeable, and it therefore cannot be enforced to deny access to the courts, under the FAA, an enforceable arbitration clause need not be more prominent than any other contract term. *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). Congress has "precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed upon the same footing as other contracts." *Doctor's Associates*, 517 U.S. at 681–682, 116 S.Ct. 1652. *See also Aramark Uniform & Career Apparel, Inc. v. Hunan, Inc.*, 276 Neb. 700, 704, 757 N.W.2d 205, 209 (2008)(holding the FAA preempts state law requirements that apply solely to arbitration agreements, such any provisions requiring "special notice" of arbitration terms).

■ The fact that the Pioneer arbitration clause was a standard provision of Pioneer's seed corn sales contracts of no import.

We dismiss the notion that, because the contract is standardized, the arbitration provision should be void. Unconscionability generally requires a showing that one party lacked a meaningful choice as to the inclusion of the challenged provision and that the challenged provision unreasonably favors the other party. *Barker v. Golf U.S.A., Inc.*, 154 F.3d 788, 792 (8th Cir.1998). The plaintiffs' claim that the "arbitration-clause-on-the-bag" cannot be enforced because, by the time the corn arrived, the planting season had begun and it was too late to reject the corn or renegotiate the terms of the sale. Whatever the merits of that argument, it has no application under the facts of this case. Todd Wojtalewicz received a Pioneer terms and conditions sheet, with the arbitration provision, before the planting season and he ordered seed corn from Pioneer. The plaintiffs have failed to show that they were required, by duress or otherwise, to purchase seed corn from Pioneer, or that had they rejected the arbitration provision, Pioneer would have rejected their order.

The plaintiffs have also failed to show the arbitration provision unreasonably favors Pioneer. Under the clause, the arbitration between Pioneer and the plaintiffs will be administered by a neutral party, the American Arbitration Association, in accordance with its Commercial Arbitration Rules. There is no reason to believe the plaintiffs and Pioneer will not be on equal footing in the arbitration forum.

■ Todd Wojtalewicz must arbitrate his claims against Pioneer. But on the current record, the court cannot decide whether the claims of co-plaintiff Kendra Wojtalewicz, or the claims assigned to the

plaintiffs by Trey, Cole, and Gerald Wojtalewicz or Quarling Farms are subject to arbitration. If an assignor's claim is subject to arbitration, it remains subject to arbitration when pursued by an assignee. *Koch,* 543 F.3d at 465.

However, the parties have not briefed, and the court has not found, law stating that claims which were not subject to arbitration automatically become so when assigned to an assignee with related claims that must be arbitrated. The factual record does not explain the relationship between the parties as it relates to the purchase of the Pioneer seed corn. For example, although Todd Wojtalewicz placed the seed corn order for the assignors, it is unclear whether he did so as their agent or as the agent/Sales *Representative for Pioneer. Nitro Distributing, Inc. v. Alticor, Inc.,* 453 F.3d 995, 999 (8th Cir.2006)("An agent is subject to the same contractual provisions, including arbitration contracts, to which the principal is bound.").[3] These facts must be developed for the court to determine whether all or only a portion of this case must be submitted to binding arbitration.

The defendant has moved to stay discovery pending arbitration. The court agrees that discovery as to the merits of the plaintiffs' claims should be stayed until the court determines if any portion of the plaintiffs' complaint should remain pending in federal court. However, as to the facts underlying that determination, discovery must be permitted. Specifically, the parties may pursue discovery to determine whether any relationship existed between Todd Wojtalewicz and his wife, and between Todd and Kendra Wojtalewicz and the assignors, such that the claims of the

assignors and Kendra Wojtalewicz must be arbitrated.

Accordingly,

IT IS ORDERED:

1) The defendant's Motion To Compel Arbitration, (Filing No. 10), is granted in part and denied in part as follows:

   a) Todd Wojtalewicz' claims held on his personal behalf, and not as an assignee, are subject to binding arbitration.

   b) Todd Wojtalewicz' personal claims will be submitted to the arbitration forum until the court determines whether Kendra Wojtalewicz' claims and the assignor claims of Trey, Cole, and Gerald Wojtalewicz or Quarling Farms are subject to arbitration.

2) The defendant's motion to stay discovery (filing no. 12) is granted in part and denied in part as follows:

   a) The parties shall not engage in discovery regarding the merits of the plaintiffs' claims.

   b) The parties are permitted to engage in discovery to determine whether any relationship existed between Todd Wojtalewicz and Kendra Wojtalewicz, and between Todd and Kendra Wojtalewicz and the assignors, such that Kendra Wojtalewicz' claims and the claims of the assignors assigned to the plaintiffs must be arbitrated.

3) As to Kendra Wojtalewicz' claims, and the assignor claims assigned to the plaintiffs, on or before September 10, 2012:

   a) The parties shall file a stipulation regarding whether these claims, or any of them, will be arbitrated, or

---

**3.** "The following theories have been recognized by courts seeking to bind a nonsignatory to an arbitration agreement: (1) common-law principles of contract and agency law; (2) incorporation by reference; (3) veil-piercing/alter ego; (4) assumption or implied conduct; (5) estoppel; (6) successor in interest; and (7) third-party beneficiary." *1 Domke on Commercial Arbitration, DCMLARB § 13.1.*

b) The defendant shall move for a judicial determination regarding whether these claims, or any of them, must be arbitrated.